IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | Case No. 23-30352 |
| | ) | (Chapter 11) |
| DRAIN SERVICES INC. | ) | |
| | ) | |
| Debtor. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| DRAIN SERVICES INC., | ) | |
| | ) | Adversary Case No. 23-07017 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL HOUDYSHELL, in his official capacity as the Secretary of the South Dakota Department of Revenue, | ) ) ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE STATE OF SOUTH DAKOTA, | ) | |
| | ) | |
| Defendants. | ) | |

**MOTION FOR SUMMARY JUDGMENT AND**
**INCORPORATED MEMORANDUM OF LAW**

Comes now Drain Services Inc. ("Drain Services" or the "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 7056, Federal Rule of Civil Procedure 56, and Local Rule 7007-1(A), and moves this Honorable Court for summary judgment in the above-captioned matter, and in support thereof states as follows:

I.  **Introduction**

The State of South Dakota has imposed a tax on Subchapter V bankruptcy estates. No doubt passive, likely inadvertent, and certainly unconstitutional, the levy creates a paradigm whereby an increased economic burden befalls small business debtors seeking to reorganize in one region of the United States, juxtaposed to those endeavoring to reorganize in other regions. This suit is

1

designed to remedy this arbitrary intrusion upon the uniformity of the national laws governing bankruptcy. And inasmuch as the questions presented *sub judice* are almost purely legal in nature, summary judgment is appropriately entered in favor of Drain Services.

**II.    Standard**

Pursuant to the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

As previously observed by this Honorable Court, in reviewing the standard governing motions for summary judgment:

> Summary judgment is appropriate when there is no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. The party seeking summary judgment bears the initial responsibility of identifying pleadings, discovery, testimony and other evidence which it believes demonstrate "the absence of a genuine issue of material fact." The moving party satisfies this burden by showing "an absence of evidence to support the nonmoving party's case." When the moving party has met its burden, the nonmoving party must then "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "

*In re McM, Inc.*, 609 B.R. 511, 513 (Bankr. D.N.D. 2019) (citing Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); quoting *Celotex Corp.*, 477 U.S. at 323–325).

**III.    Material Facts Not Subject to Genuine Dispute**

Pursuant to Federal Rule of Civil Procedure 56(c)(1)(A), Drain Services respectfully submits the following facts to not be subject to genuine dispute:

1.    On October 2, 2023, Drain Services filed a petition for relief, pursuant to Section 301 of Title 11 of the United States Code, and therein elected "to proceed under Subchapter V of Chapter 11." *See* Bankruptcy Petition, attached hereto as Exhibit A, at § 8.

2. Two days later, the United States Trustee appointed Thomas J. Kapusta ("Mr. Kapusta") to serve as the Subchapter V trustee in connection with Drain Services' bankruptcy. *See* Notice of Appointment of Subchapter V Trustee, attached hereto as Exhibit B.

3. Mr. Kapusta's principal place of business is in Sioux Falls, South Dakota. *Id.*

4. On November 17, 2023, Mr. Kapusta filed his first interim application for fees in the Drain Services bankruptcy case. *See* First Interim Application of Thomas J. Kapusta for Subchapter V Trustee Fees and Expenses (the "First Fee Application"), attached hereto as Exhibit C.

5. The First Fee Application seeks $4,730.00 in fees for services rendered, $82.32 for expenses incurred, and $293.26 for "SD Sales Tax @ 6.2% for services." *Id.*

6. The First Fee Application was granted on December 11, 2023. *See In re Drain Services*, Case No. 23-30352, at DE #98 (Bankr. D. N.D. 2023).

7. Drain Services is thusly now obligated to pay $293.26 in sales taxes, to the State of South Dakota, pursuant to Mr. Kapusta having rendered services herein as the Subchapter V trustee. *Id.*

### IV. Argument: The Sales Tax is Unconstitutional as Applied

#### a. Only Congress May Regulate Bankruptcy Proceedings

The Constitution demands that there be "uniform Laws on the subject of Bankruptcies throughout the United States." U. S. Const., Art. I, § 8, cl. 4 (the "Bankruptcy Clause"). In furtherance of this mandate, Congress – and only Congress – is empowered to pass and enact laws touching upon the subject of bankruptcy, with the legislative branch having encountered occasion to do so myriad times since the nation's founding. Such powers, however, are expressly reserved to Congress, with states being forbade from encroaching upon this hegemonic domain.

3

As observed by the Supreme Court, "[t]he Constitution grants Congress exclusive power to regulate bankruptcy. . ." *Kalb v. Feuerstein*, 308 U.S. 433, 439 (1940). Indeed, "[t]he framers of the Constitution … granted plenary power to Congress over the whole subject of 'bankruptcies,' and did not limit it by the language used." *Hanover Nat. Bank v. Moyses*, 186 U.S. 181, 187 (1902).

While states are permitted to enact their own exemptions, and provide for such exemptions to bind debtors in bankruptcy, such allowance is rooted in the concept that "the system is, in the constitutional sense, uniform throughout the United States, when the trustee takes in each state whatever would have been available to the creditor if the bankrupt law had not been passed." *Moyses*, 186 U.S. at 190.

This distinction – which has persevered as the law of the land for more than 120 years – is critical to the case *sub judice*. While states are permitted to regulate the exemptions, *vel non*, available to their respective citizens, such is solely because these are regulations that exist independent of the existence of federal bankruptcy law. Or, by way of anecdote, a North Dakota citizen is entitled to protect, from the levy of creditors, "[a]ll wearing apparel, not exceeding five thousand dollars in value, and all clothing of the debtor and the debtor's family," N.D. Cent. Code § 28-22-02(05), regardless of whether or not the North Dakotan is a debtor in bankruptcy.

Saving and excepting exemptions available to natural persons, and a quirk involving the existence of a United States Trustee versus a bankruptcy administrator, all other aspects of the bankruptcy process are uniform throughout the fifty states. Moreover, while there has, historically, been a derogation of that uniformity pursuant to laws concerning rail carriers, such was permitted only in the prism of *Congressional* action "fashion[ed] … to resolve geographically isolated problems." *Blanchette v. Connecticut Gen. Ins. Corps.*, 419 U.S. 102, 159 (1974).

4

Stated otherwise: the laws governing bankruptcies are, by constitutional mandate, uniform throughout the United States. States are permitted to govern exemptions, since such provisions impact residents without regard to whether they are debtors in bankruptcy. And Congress may, in certain extraordinary circumstances, create narrowly tailored geographic schisms in the bankruptcy laws. But state governments are not permitted to (i) impact bankruptcy proceedings in a fashion that would not visit the same debtors outside of bankruptcy; or (ii) encroach on the exclusive purview of Congress to regulate bankruptcies.

### b. The Imposition of a Tax is a Form of Regulation

Insofar as states are not permitted to regulate bankruptcy proceedings, the next question necessarily becomes whether the levying of a tax constitutes a form of regulation. Precedent instructs this is to be answered in the affirmative; taxation is not merely a form of regulation but, indeed, a form available only to government actors.

As observed by the Supreme Court in 1892, "[t]axation is undoubtedly one of the forms of regulation, but the power of each state to tax its own internal commerce, and the franchises, property, or business of its own corporations engaged in such commerce, has always been recognized. . ." *Lehigh Valley R Co v. Com. of Pennsylvania*, 145 U.S. 192, 200 (1892). *See also*, *Citizens Against Rent Control/Coal. for Fair Hous. v. City of Berkeley, Cal.*, 454 U.S. 290, 310 (1981) (White, J., dissenting) ("Every form of regulation—from taxes to compulsory bargaining—has some effect on the ability of individuals and corporations to engage in expressive activity."); *North Dakota v. United States*, 495 U.S. 423, 469, n. 15 (1990) (referring to taxes as "just one form of regulation").

The *Lehigh Valley R Co* holding invites a necessary clarification: Drain Services does not maintain the State of South Dakota is forbade from taxing Mr. Kapusta for the fees he receives;

5

Drain Services maintains only that the State of South Dakota cannot tax Drain Services for such fees. The right of South Dakota to levy an income tax upon Mr. Kapusta is not nearly disputed herein (even though the State of South Dakota elects to not presently charge such a tax), just as the right of North Dakota to tax the income of other professionals and government actors is not disputed. The question *sub judice* is not that of a state's right to tax the income of its citizens, together with those non-citizens conducting business in the state; the question, rather, is whether a state may tax the citizens of other states for the receipt of services expressly provided for under Title 11 of the United States Code (the "Bankruptcy Code"). Those are the taxes that constitute the impermissible regulation *sub judice* and those are the taxes addressed by this litigation.

In the prism of the holding of the *Moyses* Court, a state income tax impacts subjects in the same manner as "if the bankrupt law had not been passed." *Moyses*, 186 U.S. 181, 187 (1902).[1] A sales tax on the services of a bankruptcy trustee, who only collects fees on account of the provisions of the Bankruptcy Code, though, creates a reality wholly different than "if the bankruptcy law had not been passed." South Dakotans would be subject to an income tax (if the state had one) regardless of whether or not any person filed for bankruptcy anywhere in America; a North Dakota company would not owe South Dakota a sales tax on trustee services unless that company sought bankruptcy protection in a region serviced by a South Dakota trustee.

### c. The South Dakota Sales Tax Creates an Arbitrary Geographically Disparate Treatment of Debtors

Even if states enjoyed concurrent power with Congress on the regulation of bankruptcies, the subject sales tax would still be impermissible. As noted *supra*, the Bankruptcy Clause demands a "uniform" system of laws – in marked contrast to the Commerce Clause, U. S. Const., Art. I, §

---

[1] *But see Matter of CCA P'ship*, 70 B.R. 696, 698 (Bankr. D. Del. 1987) ("Congress through its bankruptcy power (Article I, § 8(4)) may circumvent the states' power to tax implicit in the Xth Amendment.").

6

8, cl. 3, and other grants of congressional power. That South Dakota imposes such a tax, when no other state (possibly excepting New Mexico) does so, creates an impermissible regime whereby a greater economic onus befalls debtors in one region than in (nearly) all other regions.

As recently as 2022, the Supreme Court has made clear that the "arbitrary geographically disparate treatment of debtors" is constitutionally prohibited. *Siegel v. Fitzgerald*, 596 U.S. 464, 476 (2022). And *Siegel* is instructive to this case, being rooted in the aforementioned anomalous construct of the United States Trustee having jurisdiction in most judicial districts, while judicially-overseen "bankruptcy administrators" serve a comparable function in a minority of districts. *Id.* at 468-469. When the fees charged by these two programs fell temporarily out of sync, a trustee overseeing the liquidation of Circuit City Stores, Inc. argued such disharmony "was nonuniform across Trustee Program districts and Administrator Program districts, in violation of the Constitution's Bankruptcy Clause." *Id.* at 472.

In *Siegel*, the Supreme Court found the difference in fees owed by debtors in different districts to be unconstitutional, noting, *inter alia*, "the uniformity requirement of the Bankruptcy Clause prohibits Congress from arbitrarily burdening only one set of debtors with a more onerous funding mechanism than that which applies to debtors in other States." *Id.* at 480.

Such is precisely what is afoot here, albeit with the added impermissibility of the taxing authority being a state government, not a federally-created bankruptcy program. A Subchapter V debtor in seemingly any judicial venue other than the Districts of North Dakota and South Dakota will be asked to pay the reasonable hourly rates of their trustee (subject to certain limitations set forth in the Bankruptcy Code) but will not be made to pay a tax thereupon. By contrast, debtors in these two districts must suffer not merely the fees contemplated by Congress (and uniformly applied throughout the land) but, too, the extra levy of a state-imposed sales tax.

7

Compounding the problem, the tax is not only geographically arbitrary in nature but, too, plainly arbitrary in nature. There is nothing about the South Dakota sales tax that is "fashion[ed] … to resolve geographically isolated problems." *Blanchette*, 419 U.S. at 159. To the contrary, South Dakota's election to raise funds through a sales tax – in lieu of an income tax – is (i) an election, not a "problem," and (ii) no different than Nevada, Florida, and other states, none of which have a comparable compulsion to tax bankruptcy trustees. *Carda v. Sec'y of Health & Human Services*, 2016 WL 5224406, at *5 (Fed. Cl. 2016) ("South Dakota is one of the few states that requires attorneys to collect sales tax from their clients for professional services provided") (citing S.D. Codified Laws § 10-45-4 to 4.1). Nor does it appear South Dakota taxes trustees in a non-arbitrary fashion aimed at addressing generalized problems, with the state's tax scheme being overrun by exceptions for individuals ranging from rodeo clowns, S.D. Codified Laws § 10-45-12.7, to amateur football referees, S.D. Codified Laws § 10-45-90.[2]

## V.     Conclusion

South Dakota – in contravention of the "plenary power to Congress over the whole subject of 'bankruptcies,'" *Moyses*, 186 U.S. at 187 – has imposed a geographically-unique tax upon the services on bankruptcy trustees. This tax, in the context of a Subchapter V case, is passed along to debtors and their respective estates, creating a burden unique to the regions served by South Dakota trustees. Such is not permissible under the Bankruptcy Clause, *Moyses*, and *Moyses*' progeny. And

---

[2] Drain Services does not mean to diminish the work of rodeo clowns or amateur referees, nor to suggest that South Dakota may not have some interest in affording special protections to these lines of work. Rather, these exemptions are highlighted to show that South Dakota is fully capable of placing certain professions outside its taxing scheme but nonetheless capriciously prioritizes certain professions, which have no freestanding legal import, over the role of a Subchapter V trustee, which has been created by Congress pursuant to its constitutional mandate to provide "uniform Laws on the subject of Bankruptcies throughout the United States." U. S. Const., Art. I, § 8, cl. 4.

in the context of this case, the result is an arbitrarily-heightened economic burden on Drain Services.

WHEREFORE, Drain Services respectfully prays this Honorable Court (i) declare Section 10-45-1, *et seq.* of the South Dakota Codified Laws unconstitutional as applied to the collection of sales taxes from the estates of debtors in bankruptcy, where such taxes are collected pursuant to the provision of trustee services in the subject bankruptcy proceeding; (ii) permanently enjoin the Defendants from collecting any sales taxes from the Debtor (directly or through the conduit of Mr. Kapusta) in connection with the performance of Subchapter V trustee duties in this case; and (iii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: January 2, 2024   By:   /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of January, 2024, a copy of the foregoing was served, via first class mail, postage prepaid, upon:

Office of the Attorney General
1302 E Hwy 14
Suite 1
Pierre SD 57501-8501

Sec. Michael Houdyshell
South Dakota Department of Revenue
445 E Capitol Avenue
Pierre, SD 57501

Gov. Kristi Noem
500 East Capitol Avenue
Pierre, SD 57501

<u>/s/ Maurice B. VerStandig</u>
Maurice B. VerStandig, Esq.
